**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **CARDON PROPERTY NO. 4, LLC, et al.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 13-5440 c/w 13-5973** |
| **FIDELITY NATIONAL INDEMNITY INSURANCE CO.** | **SECTION: "G"(5)** |
| | **APPLIES TO: 13-5440** |

**ORDER**

Before the Court is Defendant Fidelity National Indemnity Insurance Company's ("Fidelity") "Motion for Summary Judgment."[1] Having considered the motion, the memorandum in support, the memorandum in opposition, the reply memorandum, the record, and the applicable law, the Court will grant the motion.

**I. Background**

*A.    Factual Background*

This litigation arises out of an insurance dispute between Plaintiffs Cardon Property 4, LLC and Cardon Real Estate Holdings No. 4, LLC (collectively, "Cardon") and their flood insurance carrier, Fidelity, following Hurricane Isaac.[2]  Fidelity is a Write-Your-Own ("WYO") Program carrier participating in the U.S. Government's National Flood Insurance Program ("NFIP") pursuant

---

[1] Rec. Doc. 34.

[2] Local Rule 56.2 requires that all material facts set forth by the movant on a Motion for Summary Judgment must be controverted by the non-movant or else be deemed admitted. Cardon has failed to dispute any material facts presented by Fidelity. Accordingly, the Court deems the facts stated in Fidelity's "Statement of Uncontested Material Facts" (Rec. Doc. 34-29) to be admitted.

to the National Flood Insurance Act of 1968.[3] Fidelity is a signatory to the Arrangement promulgated by the Federal Emergency Management Agency ("FEMA") in its capacity as the agency charged by Congress with running the NFIP.[4]

On September 14, 2007, Cardon entered a "bond for deed" contract with K-Lo Enterprises ("K-Lo") for the real property – a convenience store – which is the subject of this litigation.[5] K-Lo purchased all of the movables located within the building for $100,000.[6] After September 14, 2007, K-Lo did not purchase any additional contents for use in the convenience store.[7] K-Lo never purchased a flood insurance policy for which it was a named insured, and K-Lo was never named as an insured on the flood insurance policy at issue in this case.[8]

On or about August 29, 2012, the convenience store experienced a temporary condition of flooding.[9] Fidelity issued a Standard Flood Insurance Policy ("SFIP") to Cardon, covering the convenience store and the contents therein.[10] The SFIP was effective from April 9, 2012 until April 9, 2013.[11] Fidelity contacted an independent adjusting firm, Colonial Claims Corporation ("CCC"),

---

[3] Rec. Doc. 34-29 at p. 1.

[4] *Id.*

[5] *Id.* at p. 4.

[6] *Id.* at p. 5.

[7] *Id.*

[8] *Id.*

[9] *Id.* at p. 2.

[10] *Id.*

[11] Rec. Doc. 34-3.

to begin adjusting the claim pursuant to the applicable federal rules promulgated by FEMA.[12] CCC sent an independent adjuster, Danny Branham, to inspect Cardon's property.[13] Branham inspected the property, assessed the flood damage, and prepared a damage estimate of $246,438.56.[14] Branham also prepared a supplemental building claim estimate of $4,125.53 for additional building items.[15] Branham received several inventories of contents from Cardon, and prepared an estimate of lost/damaged contents which totaled $160,801.64.[16] Cardon signed a Proof of Loss for $164,927.27 on March 26, 2013.[17]

On October 3, 2014, Fidelity issued a check to Cardon as an advance payment on the building damage claim in the amount of $75,000.[18] A second check for building damage was issued on February 22, 2013 in the amount of $171,438.56.[19] Fidelity issued a final check for building damages in the amount of $4,125.53.[20] Fidelity issued two checks for contents in the total amount of $160,801.64.[21]

On April 15, 2013, Cardon submitted to Fidelity a signed Proof of Loss for the net claim

---

[12] Rec. Doc. 34-29 at p. 2.

[13] *Id.*

[14] *Id.*

[15] *Id.* at p. 3.

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] *Id.* at p. 4.

amount of $998,000, which equals the policy limit for contents of $500,000 and the policy limit for building damage of $500,000, minus the $1,000 deductible for each.[22] Cardon's claim for building damages is based on a September 4, 2013 estimate by Gulf Coast Adjusting and an August 8, 2013 report by Gurtler Brothers Consulting, Inc.[23] No building repair estimate was submitted by Cardon to Fidelity prior to August 14, 2013.[24] Fidelity has no evidence of a waiver from the Federal Insurance Administrator for Cardon's claim and property, beyond the amounts that Fidelity has already paid to Cardon.[25] The deadline for submission of a Proof of Loss is normally 60 days after a loss, but FEMA extended the deadline for Hurricane Isaac for a period of 240 days. Accordingly, the Proof of Loss deadline was extended to April 2013.[26]

## B.    *Procedural Background*

Cardon filed the complaint in the pending matter on August 14, 2013,[27] alleging that Fidelity failed to timely pay Cardon's full claim under the building and contents limits of the policy.[28] Also on August 14, 2013, Cardon filed a separate petition against Defendant General Star Indemnity Company ("General Star") for failure to properly investigate, adjust, and pay Cardon's building and contents insurance claims arising out of damages to the convenience store from Hurricane Isaac.[29]

---

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *See* Rec. Doc. 34-25.

[27] Rec. Doc. 1.

[28] *Id.* at p. 4.

[29] Rec. Doc. 1-1.

General Star removed the case to federal court, where it was consolidated with Cardon's lawsuit against Fidelity on  January 17, 2014.[30] On October 8, 2014, Cardon and General Star filed a joint Motion for Partial Dismissal, stating that they resolved their dispute and requesting that Cardon's claims against General Star be dismissed.[31] The Court granted the motion on October 10, 2014 and dismissed the lawsuit against General Star while specifically reserving all claims against Fidelity.[32] Fidelity filed the pending Motion for Summary Judgment on September 29, 2014.[33] On October 8, 2014, Cardon filed a memorandum in opposition.[34] On October 14, 2014, Fidelity filed a reply in support of its motion.[35]

## II. Parties' Arguments

### A.     *Fidelity's Arguments in Support of its Motion for Summary Judgment*

Fidelity first contends that Cardon failed to submit a proper Proof of Loss for the disputed amount with supporting documentation prior to the start of litigation and prior to FEMA's Proof of Loss deadline.[36]  According to Fidelity, Article VII(J)(4)(f) of the SFIP provides: "Within 60 days after the loss, send us a proof of loss, which is your statement of the amount you are claiming under the policy signed and sworn to by you, and which furnishes us with the following information...(f).

---

[30] Rec. Doc. 9.

[31] Rec. Doc.

[32] Rec. Doc. 45.

[33] Rec. Doc. 34.

[34] Rec. Doc. 44.

[35] Rec. Doc. 53.

[36] Rec. Doc. 34-1 at p. 1.

5

Specifications of damaged buildings and detailed repair estimates."[37] The SFIP Proof of Loss requirement, according to Fidelity, calls for a signed and sworn Proof of Loss as well as documentation that supports the amount claimed in that proof of loss.[38] Here, Fidelity argues, Cardon did not provide "specifications of damaged buildings  and detailed repair estimates."[39] Fidelity cites several Fifth Circuit cases for the contention that failure to timely submit a signed and sworn Proof of Loss bars recovery,[40] and several cases from other sections of this Court which, according to Fidelity, hold that a lack of verifying documentation renders a Proof of Loss submission deficient.[41] It is undisputed, Fidelity contends, that Cardon failed to provide any supporting documentation with its Proof of Loss prior to filing suit and prior to the FEMA deadline following Hurricane Isaac.[42]

Even if the flood adjuster, Danny Branham, was not thorough in his evaluation of the building damages, Fidelity argues, Article VII(J)(7) states that the flood adjuster hired by the WYO carrier to investigate the claim to assist with the insured's proof of loss is "a matter of courtesy only,

---

[37] *Id.* (citing  44 C.F.R. Pt. 61, App. A(2), Art. VII(J)(4)).

[38] *Id.*

[39] *Id.*

[40] *Id.* at p. 11 (citing *Kidd v. State Farm Fire and Cas. Co.*, 392 Fed.App. 241, 244-45 (5th Cir. Aug. 2, 2010); *Norman v. Fidelity Nat'l Ins. Co.*, 354 Fed.Appx. 934, 937 (5th Cir. Dec. 8, 2009); *Wientjes v. American Bankers Ins. Co. of Florida*, 339 Fed.App. 483, 485-486 (5th Cir. Aug. 5, 2009); *Marseilles Homeowners Condo. Assn. v. Fidelity Nat'l Ins. Co.*, 542 F.3d 1053, 1056 (5th Cir. Sep. 10, 2008); *Richardson v. American Bankers Ins. Co. of Florida*, 279 Fed.App. 295, 2008 WL 510518 (5th Cir. Feb. 27, 2008); *Wright v. Allstate Ins. Co.*, 415 F.3d 384, 388 (5th Cir. Jun. 28, 2005); *Forman v. FEMA*, 138 F.3d 543, 545 (5th Cir. Mar. 9, 1998); and *Gowland v. Aetna* , 143 F.3d 951, 954 (5th Cir. 1998)).

[41] *Id.* at pp. 11-12 (citing *McCallon v. Traveler's Flood Program*, 2010 WL 148274, *1 (E.D.La. Jan. 11, 2010) citing *Trosclair v. State Farm Fire and Cas. Ins. Co*., 2008 WL 5157715, *2-3 (E.D.La. 12/9/08); *Naghi d/b/a Naghi's v. Fidelity Nat. Prop. Ins. Co*., 2008 WL 4427216, *1 (E.D.La. 9/25/08); *Ottallah v. State Farm Fire and Cas. Ins. Co*., 2008 WL 3539667, *3-5 (E.D.La. Jul. 31, 2008); *Wells v. Fidelity Nat. Prop. Ins. Co*., 2008 WL 2781539, *3 (E.D.La. Jul. 14, 2008); *Eichaker v. Fidelity Nat. Prop. Ins. Co*., 2008 WL 2308959, *3-4 (E.D.La Jun. 3, 2008)).

[42] *Id.*

6

and you must still send us a proof of loss within sixty days after the loss even if the adjuster does not furnish the form or help you complete it."[43]

Fidelity next argues that under Article III(B) of the SFIP, Cardon cannot obtain recovery for contents that it did not own at the time of loss.[44] According to Fidelity, it is undisputed that Cardon sold the movables within the Ferry Stop convenience store to K-Lo on September 14, 2007, and did not subsequently purchase any additional contents to place within the convenience store.[45] Fidelity points to the Cash Sale of Movables, signed by Cardon on September 14, 2007, which allegedly gave "all of the Seller's right, title and interest in and to the following described movable property: All furniture, fixtures, inventory, equipment, shelving, racks, coolers, and all other property, located at 3762 Highway 39, Braithwaite, LA 70040."[46] According to Fidelity, K-Lo purchased the moveables outright, with no loan or financing from Cardon.[47] Nonetheless, Fidelity contends, numerous items listed by Cardon as "contents" were, in fact, included in Branham's estimate of building damages and paid to Cardon, including stoves and freezers.[48] Fidelity argues that of the items already paid to Cardon under its contents coverage, Cardon has identified only the ice freezer, air compressor, and video surveillance as "fixtures" that were part of the building.[49]

Finally, Fidelity argues that the SFIP is void because Cardon allegedly answered "yes" to

---

[43] *Id.* at p. 13.

[44] *Id.* at pp. 13, 15 (citing 44 C.F.R. Pt. 61, App. A(2), Art. III(B)(1)).

[45] *Id.* at p. 15.

[46] *Id.* (citing Ex. 17; Rec. Doc. 34-21 at 41:22-42:10).

[47] *Id.* at p. 18.

[48] *Id.* at p. 15. (citing Rec. Doc. 34-21 at 48:15-21).

[49] *Id.* at pp. 16–17.

the question "Are the contents claimed owned by you?" on a "Hello" letter used by an independent adjuster to confirm basic information about the property.[50] Fidelity alleges that Cardon signed the form on September 4, 2012 and is presumed to have read a document that he signed.[51] According to Fidelity, the SFIP provides that, with respect to all insured, if any insured or agent of same (1) intentionally concealed or misrepresented any material fact or circumstance, or (2) engaged in fraudulent conduct, or (3) made false statements relating to the policy, the policy is void and of no legal force or effect as of the date of said act.[52] Therefore, Fidelity argues,  the SFIP issued to Cardon should be considered void as of September 4, 2012, when the "Hello" letter was signed.[53] Fidelity cites a case from the District of Puerto Rico in support of this contention.[54]

## B.    *Cardon's Arguments in Opposition*

In opposition, Cardon argues that it timely filled out and submitted a sworn FEMA Proof of Loss, has an insurable interest in the property and contents at issue, and is not otherwise disqualified from presenting its claim.[55] First, Cardon quotes at length from *Curole v. Louisiana Citizens Property Ins. Co.*[56] Although Cardon provides no analysis of *Curole*, it does emphasize quoted language suggesting that a genuine issue of material fact existed with respect to whether Plaintiffs

---

[50] *Id.* at p. 19.

[51] *Id*. (citing Ex. 26; Rec. Doc. 34-21 at 173:2–174:13).

[52] *Id.* at p. 20 (citing 44 C.F.R. Pt. 61 App. A(1), Art. VII(B)(1) & (2); *Hanak v. Talon Ins. Agency, Ltd.*, 470 F.Supp.2d 695, 704 (E.D.Tex. 2006); *Supermercados Econo v. Integrand Assurance Co.*, 359 F.Supp.2d 62, 70 (D.P.R. 2005)).

[53] *Id.*  (citing 44 C.F.R. Pt. 61, App. A(2), Article VII(B)(1)).

[54] *Id.* (citing *Supermercados Econo v. Integrand Assurance Co.*, 359 F.Supp.2d 62 (D.P.R. 2005)).

[55] Rec. Doc. 44 at p. 1.

[56] *Id.* at pp. 6–9 (citing *Curole v. Louisiana Citizens Property Ins. Co.*, 2007 U.S. Dist. LEXIS 12619 (ED LA 2007)).

there failed to comply with the proof of loss requirement because they did not provide FEMA with documentation in the form of receipts, invoices, and/or cancelled checks for the covered flood damage that have been made to the property."[57] Cardon states, again without providing analysis, that "[i]t has also been acknowledged that unique circumstances can affect the analysis of the FEMA Proof of Loss submission."[58] Cardon cites, without providing analysis, several non-binding cases.[59]

Cardon next argues that:

However, given that following [sic], Fidelity's attack cannot succeed:
1.    The FEMA POL was completed, sworn (with its attachments) and timely provided;
2.    There were no existing receipts to attach;
3.    There were no repair bills;
4.    Cardon provided Fidelity photographs of the damage to the structure *and* contents well in advance of the POL deadline;
5.    Fidelity has not disputed that the damage to the first floor of the property was from flood related causes and Mr. Treuil's deposition testimony confirms this.[60]

Next, Cardon argues that Fidelity "has failed to provide competent summary judgment evidence that a bond for deed holder does not have an insurable interest in the contents of a business which is obligated to make monthly payments to it."[61] Finally, with respect to Fidelity's argument that Cardon made material misrepresentations that void the policy, Cardon contends that Fidelity has failed to

---

[57] *Id.* at p. 9.

[58] *Id.* (citing *Brouner v Farmers' Insurance Company of Washington, Inc.*, 2011 U.S. Dist. LEXIS 9695 (W.D. Wash. 2011)).

[59] *Id.* at pp. 9–10 (citing, e.g., *Rentrop v Trustmark National Bank, et al,* 2008 U.S. Dist. LEXIS 71867 (S.D. MS. 2008); *In Re. Amiel Restaurant* Partners, 510 B.R. 744 (2014)).

[60] *Id.* at p. 11 (citing Exhibit 1 Claim File PC 0716-0736; Exhibit 12 to the Motion; Exhibit 5 p. 54. See also p. 15 "I lost every record I has after Isaac;" Exhibit 2 p. 48; Exhibit 4A-I Claim File PC 0753-0999; Exhibit 5 p. 69).

[61] *Id.* at pp. 11–12.

demonstrate the absence of a genuine issue of material fact on this issue.[62] Cardon avers that "Fidelity has failed to direct the Court to a definition of 'Contents' which would delineate what is 'movable' and what is immovable by destination, nor to demonstrate that insured's [sic] are given any guidance on this point."[63] Additionally, Cardon states that "[i]t should be noted that Fidelity has not adverted to its underwriting file in any way to demonstrate that it lacked awareness of the cash sale."[64]

### C.    *Fidelity's Reply in Further Support*

Fidelity contends that Cardon has presented no competent summary judgment evidence to establish (1) that it timely provided a repair estimate for the additional building amount that it seeks in this litigation; (2) that it has any right to recover federal funds for the lost and damaged contents pursuant to the SFIP; and (3) that it did not make a false statement with respect to owning contents.[65]

First, Fidelity reavers its position that Cardon has failed to meet the Proof of Loss requirements.[66] Fidelity contends that Cardon essentially argues that its submission of a Proof of Loss form for the policy limits, photographs of the damaged property, and the bond for deed contract were sufficient.[67] Fidelity does not dispute that the property suffered flood damage, or that the flood damages to the building were covered under the policy.[68] Instead, Fidelity contends that Cardon

---

[62] *Id.* at p. 12.

[63] *Id.*

[64] *Id.* at pp. 12–13.

[65] Rec. Doc. 53 at p. 1.

[66] *Id.* at p. 2.

[67] *Id.*

[68] *Id.*

prepared its repair estimate on September 4, 2013, "long after the April 2013 deadline relative to Isaac."[69] With respect to Cardon's argument that it had no receipts for the contents of the property or for repairs to the property, Fidelity avers that "[w]hile receipts for repair work to the building would satisfy the Proof of Loss requirement, the SFIP is also clear that a "detailed repair estimate" would satisfy the documentation requirements for an unrepaired property. The Gulf Coast Adjusting (Rich Lyon) estimate was prepared for that purpose – but too late as per FEMA's requirements."[70] Fidelity contends that since *Curole*, it has been repeatedly held that where a plaintiff failed to submit specifications of damaged buildings and repair estimates and supporting documentation with the Proof of Loss form, the submission of the Proof of Loss form for the total amount claimed is not sufficient.[71]

Next, Fidelity contends that Cardon has failed to cite any provision of the SFIP, any federal regulation, or any written guidance from FEMA which would permit Cardon to recover for damaged contents that it did not own at the time of the loss.[72] In response to Cardon's argument that Fidelity failed to provide a sufficient definition of "Contents," Fidelity argues that "[t]he items which were classified as 'contents' pursuant to the SFIP are certainly movable by nature."[73] With respect to

---

[69] *Id.* at p. 2 (citing Rec. Doc. 34-24).

[70] *Id.*

[71] See *McCallon v. Traveler's Flood Program*, 2010 WL 148274, *1 (E.D.La. Jan. 11, 2010) citing *Trosclair v. State Farm Fire and Cas. Ins. Co.*, 2008 WL 5157715, *2-3 (E.D. La. 12/9/08); *Naghi d/b/a Naghi's v. Fidelity Nat. Prop. Ins. Co.*, 2008 WL 4427216, *1 (E.D.La. 9/25/08); *Ottallah v. State Farm Fire and Cas. Ins. Co.*, 2008 WL 3539667, *3-5 (E.D.La. Jul. 31, 2008)(lack of verifying documentation rendered proof of loss submission deficient); *Wells v. Fidelity Nat. Prop. Ins. Co.*, 2008 WL 2781539, *3 (E.D.La. Jul. 14, 2008)(belated repair estimate and damaged contents list did not cure pre-suit failure to submit adequate documentation); *Eichaker v. Fidelity Nat. Prop. Ins. Co.*, 2008 WL 2308959, *3-4 (E.D. La  Jun. 3, 2008)).

[72] *Id.* at p. 3.

[73] *Id.* at p. 4.

11

Cardon's argument that it has an "insurable interest" in the store because K-Lo was obligated to make monthly payments and maintain flood insurance, Fidelity contends that Cardon did not have a lien interest or ownership interest in the contents whatsoever.[74] Additionally, according to Fidelity, the payments to Cardon from K-Lo were "essentially lease payments," and the SFIP has an exclusion of coverage for "loss of revenue or profits" and "any other economic loss you suffer."[75] Furthermore, Fidelity contends that "the SFIP is very clear that it pays for personal property 'owned solely by you.'"[76] According to Fidelity, the contract between Cardon and K-Lo does not obligate Fidelity to pay federal funds to Cardon.

According to Fidelity, Cardon has not established that Fidelity had an insurable interest in the store's contents at the time of Isaac or that Fidelity had any legal obligation to pay Cardon under its 'insurable interest' theory.[77]  Fidelity argues that there is no arguable basis that Cardon owned the inventory, tables and chairs purchased by K-Lo prior to Isaac or that such items were "fixtures" of the building.[78] Finally, Fidelity reavers that Cardon has failed to create a genuine issue of material fact that the signed "Hello" letter was not objectively false.

### III. Standard on a Motion for Summary Judgment

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as

---

[74] *Id.* (citing Rec. Doc. 44 at pp. 11–12).

[75] *Id.* at pp. 4–5 (citing SFIP Art. V(A)(1) and (7)).

[76] *Id.* at p. 5 (citing 44 C.F.R. Pt. 61, App. A(2), Art. III(B)(1)(a)).

[77] *Id.* at p 6.

[78] *Id.* at p. 7.

a matter of law."[79] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[80] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[81] If the record, as a whole, could not lead a rational trier of fact to find for the non-moving party, then no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law."[82] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[83]

The party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[84] Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[85] To withstand a motion for summary judgment, a plaintiff must show that there is a genuine issue for trial by presenting evidence of specific facts.[86] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied  merely by creating "some metaphysical doubt as to

---

[79] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[80] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[81] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[82] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

[83] *See, e.g.*, *Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[84] *Celotex*, 477 U.S. at 323.

[85] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.1994), cert. denied, 513 U.S. 871 (1994).

[86] *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012), citing *Anderson*, 477 U.S. 242 at 248-49.

the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[87] Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.[88]

## IV. Analysis

### A.    *Cardon's Building Repair Claim*

The terms and conditions of all federal flood insurance policies, including the one at issue here, are fixed by Federal Emergency Management Agency ("FEMA"). Such policies must be issued in the form of the SFIP, and no provision of the policy can be altered, varied or waived without the express written consent of the Federal Insurance Administrator.[89] Since pay-outs implicate the federal treasury, provisions of the SFIP must be strictly enforced and construed.[90] "A NFIP participant cannot file  a lawsuit seeking further federal benefits under the SFIP unless the participant can show prior compliance with all policy requirements."[91]  In cases of  flood loss to insured property, the insured must notify the insurer of the loss and submit a complete signed and sworn Proof of Loss setting out the nature, cause, and value of the loss.[92]  In cases construing the

---

[87] *Little*, 37 F.3d at 1075.

[88] *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987); Fed.R .Civ.P. 56(c)(2).

[89] *Gowland v. Aetna*, 143 F.3d 951, 953 (5th Cir. 1998) (citing 44 C .F.R. §§ 61.4(b), 61.13(d)).

[90] *Id.* at 954; *Wright v. Allstate Insurance Co.*, 415 F.3d 384, 954 (5th Cir.2005).

[91] *Richardson v. Am. Bankers. Ins. Co. of Fla.,* 279 Fed. Appx. 295, 298 (5th Cir. 2008) (citing 44 C.F.R. pt. 61, app. A(1) art. VII(R)).

[92] *Copeland v. Federal Emergency Management Agency*, 2004 WL 325577 (E.D.La. Feb. 18, 2004) citing Gowland, 143 F.3d at 954.

terms of the SFIP, the Fifth Circuit has held that an insured must file a sworn Proof of Loss before seeking damages in excess of the amount paid by the insurer.[93] The insured must additionally comply with the strict pre-suit requirements of the NFIP.[94]

Fidelity does not dispute that Cardon submitted a timely Proof of Loss; it argues that Cardon's Proof of Loss was incomplete because it did not contain documents supporting the claimed amount.[95]  Under the SFIP, the insured must submit a proof of loss that meets certain requirements:

4.      Within 60 days after the loss, send us a proof of loss, which is your statement of the amount you are claiming under the policy signed and sworn to by you, and which furnishes us with the following information:

a.      The date and time of loss;

b.      A brief explanation of how the loss happened;

c.      Your interest (for example, "owner") and the interest, if any, of others in the damaged property;

d.      Details of any other insurance that may cover the loss;

e.      Changes in title or occupancy of the covered property during the term of the policy;

f.      Specifications of damaged buildings and detailed repair estimates;

g.      Names of mortgagees or anyone else having a lien, charge, or claim against the insured property;

h.      Details about who occupied any insured building at the time of loss and for what purpose; and

i.      The inventory of damaged personal property described in J.3. above.[96]

---

[93] *Kidd v. State Farm Fire & Cas. Co.*, 392 F. App'x 241, 244 (5th Cir. 2010) (citing *Marseilles Homeowners Condo. Ass'n, Inc. v. Fid. Nat'l Ins. Co.*, 542 F.3d 1053, 1055-56 (5th Cir. 2008) (per curiam) (holding that the insured could not maintain a lawsuit for additional federal benefits because he had not submitted a sworn proof of loss); 44 C.F.R. § 61, app. (A)(1), arts. VII(J), VII(R) (stating that an insured in the NFIP "may not sue us to recover money under this policy unless [it has] complied with all the requirements of the policy").

[94] *See* 44 C.F.R. § 61, App. A(1), Art. VII. (J)(3) and (4).

[95] Rec. Doc. 34-1 at p. 10.

[96] 44 C.F.R. pt. 61, app. A(2), art. VII(J).

These are strict requirements.[97] The SFIP provides that the insureds "may not sue [the insurer] to recover money under this policy unless [the insureds] have complied with all the requirements of the policy."[98]

Here, Cardon alleges that it provided Fidelity with the Bond for Deed and the separate Cash Sale of Movables regarding the Property's contents, as well as  photographs of the damage to the structure and the contents.[99] However, with respect to the building damage, Cardon points to no relevant supporting documents, let alone specifications or detailed repair estimates, that it submitted prior to initiating this suit. Cardon hired Gulf Coast Adjusting to inspect the property and prepare an estimate of building damages, but this estimate was not prepared until September 4, 2013, approximately five months after the April 2013 deadline.  Under the stringent requirements of the NFIP, merely submitting a Proof of Loss with the total amount claimed under the policy is not sufficient. Accordingly, Cardon's failure to document its loss before filing suit is fatal to its claim.[100]

**B.**   ***Cardon's Contents Claim***

Along with its Proof of Loss, Cardon submitted, without explanation, a list of items with

---

[97] *Forman*, 138 F.3d at 546; *Richardson*, 279 Fed. Appx. at 298.

[98] *Id*. art. VII(R).

[99] Rec. Doc. 44 at pp 2–3.

[100]   *See, e.g., McCallon v. Traveler's Flood Program*, No.  09-0244, 2010 WL 148274, at *1 (E.D. La. Jan. 11, 2010) (Engelhardt, J.) (granting summary judgment where plaintiff failed to submit  specifications of damaged buildings and repair estimates);  *Markey v. Louisiana Citizens Fair Plan*, No. CIV.A.06 5473, 2009 WL 23858, at *2 (E.D. La. Jan. 5, 2009) (Vance, J.) (same); *Trosclair v. State Farm Fire Ins. and Cas. Co.*, No. 07–4616, 2008 WL 5157715, *2–3 (E.D.La. 12/09/08) (Engelhardt, J.) (discussing requirements for properly supported proof of loss under SFIP); *Naghi d/b/a Naghi's v. Fidelity Nat. Prop. Ins. Co.*,  No. 07–4498, 2008 WL 4427216, * 1 (E.D.La.9/25/08) (Engelhardt, J.) (same); *Otallah v. State Farm Fire and Cas. Ins. Co.*, No. 07–5183, 2008 WL 3539667,*3–5 (E.D. La. 7/31 /08) (Berrigan, J) (lack of verifying documentation rendered proof of loss submission deficient; *Wells v. Fidelity Nat. Prop. Ins. Co.*, No. 06–5381, 2008 WL 2781539, *3 (E.D.La.7/14/08) (Duval, J.) (belated repair estimate and damaged contents list did not cure pre-suit failure to submit adequate documentation); *Eichaker v. Fidelity Nat. Prop. Ins. Co.*, No. 07–4485, 2008 WL 2308959, *3–4 (E.D.La. 6/3/08) (Africk, J .) (explaining insurer's need for information verifying amounts claimed in proof of loss form).

corresponding values totaling $581,588.[101] Fidelity contends that Cardon is not entitled to receive any NFIP funds on these "contents" because Cardon sold the movables within the convenience store to K-Lo on September 14, 2007, and therefore did not own the items at the time of the flood.[102] Cardon does not dispute that it sold the movables to K-Lo;[103] it argues that "a bond for deed holder [has] an insurable interest in the contents of a business which is obligated to make monthly payments to it."[104] Cardon cites no legal authority for this proposition. In response, Fidelity avers that Cardon did not retain a lean or ownership interest in the contents, and, even if it did, the contract between Cardon and K-Lo does not obligate Fidelity to pay federal funds to Cardon.[105]

Here, Cardon presents no evidence that it owns the personal property for which it seeks to recover; in fact, Cardon concedes that it sold the contents of the convenience store to K-Lo in 2007.[106] Additionally, Cardon does not dispute that, pursuant to the SFIP, an insured cannot recover for personal property that it did not own at the time of the loss.[107] Cardon neither points to evidence in the record of a genuine issue of fact, nor cites any binding legal authority in support of its claims. Even if some contents were considered part of the building as "fixtures" or "immovable," Cardon has failed to timely provide sufficient documentation of building damage. Furthermore, Cardon

---

[101] Rec. Doc. 44-3 at pp. 5–8.

[102] Rec. Doc. 34-1 at p. 15.

[103] Rec. Doc. 34-29 at p. 5.

[104] Rec. Doc. 44 at pp. 11–12.

[105] Rec. Doc. 53 at p. 5.

[106] Rec. Doc. 44 at p. 2.

[107] 44 C.F.R. pt. 61, app. A(1) art. III(B)(1)(a) states:
  If you have purchased personal property coverage, we insure, subject to B. 2., 3., and 4. below, against direct physical loss by or from flood to personal property inside the fully enclosed insured building: Owned solely by you, or in the case of a condominium, owned solely by the condominium association and used exclusively in the conduct of the business affairs of the condominium association.

does not address Fidelity's argument that Cardon made false statements relating to the policy on the September 4, 2012 "Hello" letter.  As stated above, in order to prevail on a Motion for Summary Judgment, a plaintiff must show that there is a genuine issue for trial by presenting evidence of specific facts.[108]  The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied  merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of  evidence."[109]  The Court finds, accordingly, that Cardon has failed to carry its burden of proof of demonstrating a genuine issue of material fact.

## V. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Fidelity's "Motion for Summary Judgment"[110] is **GRANTED.**

**NEW ORLEANS, LOUISIANA**, this  7th  day of November, 2014.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[108] *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012), citing *Anderson*, 477 U.S. 242 at 248-49.

[109] *Little*, 37 F.3d at 1075.

[110] Rec. Doc. 34.

18